SARAH E. MEEKS ET AL. v. WALTER WILLARD.

1. If the plaintiff in an action of trespass *quare clausum fregit* rests his case without having offered competent proof of his possession of the *locus in quo* at the time of the alleged injury, a motion to nonsuit should prevail. The nineteenth rule of *Hil. T.*, 16 *Vict.* (1853), which requires the defendant specially to traverse the plaintiff's allegation of possession if he intends to deny it, has not been adopted in the practice of our courts.

2. Where a parcel of land and the building thereon are conveyed by reference to the side of the building as a boundary, the presumptive inference is that the whole of the building was meant to pass to the grantee, and to this end the line of overhanging eaves will be taken to be the boundary intended. This inference, however, may be controlled by other expressions in the deed or rebutted by competent evidence showing a practical location by the parties or working an estoppel of the plaintiff.

3. Where the terms used in the description of a deed are unambiguous, its interpretation is for the court, but where the terms themselves are ambiguous or their presumptive meaning is rebutted by competent proof *aliunde*, the question of the meaning expressed by the deed is for the jury.

Error to Middlesex Pleas.

Argued at February Term, 1894, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL, GARRISON and LIPPINCOTT.

For the plaintiff in error, *Theodore Strong.*

For the defendant in error, *Willard P. Voorhees.*

The opinion of the court was delivered by

GARRISON, J. The plaintiff brought an action of trespass against the defendant and declared upon two counts—*first*, for entering plaintiff's close and cutting trees, and *second*, for digging up the ground and placing obstructions therein. The defendant pleaded the general issue.

When the plaintiff rested his case, a motion for nonsuit was made upon the ground that at the time of the alleged trespass the plaintiff was not in the possession of the *locus in quo.*

If the plaintiff closed his case without having offered competent proof of his possession of the *locus in quo,* this motion should have prevailed.

The legal contention of the plaintiff upon this point is that, in actions of trespass upon land, the plea of not guilty operates as a denial of the defendant's having committed the trespass alleged in the place mentioned, but not as a denial of the plaintiff's possession or right of possession of that place, which, if intended to be denied, must be traversed specially.

In support of this proposition, *Add. Torts,* § 424, is cited, where the rule is stated in the words above given. This, however, is not the common-law rule, but results in modern English practice, from the nineteenth rule of *Hil. T.,* 16 *Vict.* (1853), which has not been adopted in the practice of our courts. He also cites *Appleby* v. *Obert,* 1 *Harr.* 336, which was an appeal from a justice's court to try title under our statute, and does not, in any of its aspects, apply to the common-law action for trespass *quare clausum fregit.* This case is likewise cited in *Wood N. Ad. Cont.,* § 425, in a manner that is erroneous and misleading. The common-law rule in force in this state is thus stated in 2 *Saund. Pl. & Ev.* 1126: " Unless, at the time the injury was committed, the plaintiff be proved to have been in actual or constructive possession, the action cannot be supported. A mere right to enter is not sufficient."

The facts in proof when the plaintiff rested his case were these :

The plaintiff and defendant owned and occupied adjoining village lots. Originally both properties had been owned by John Smock, who, in 1869, sold to the plaintiff one lot and retained the other until a somewhat later period, when he conveyed it to the parties under whom the defendant holds

her title. At the time the plaintiff purchased his lot the front of it was occupied by a storehouse, the northeasterly side of which was called for as the boundary line between the lot on which it stood and the one retained by the grantor. A year or two later the plaintiff built a fence from the corner of this building, running back the length of the lots and separating them. This fence was built in a line with the side of the storehouse extended, and was some twenty-one inches inside the line of the eaves of the storehouse. This condition has been maintained ever since, and was the condition at the time the alleged trespasses were committed upon the twenty-one inches which constitute the *locus in quo* in this case. Without any reference to the proper construction of the plaintiff's deed, he was, upon this state of facts, clearly out of possession of the *locus*. He not only had no visible *pedis possessio*, but, on the contrary, had separated it from the lands in his actual occupancy by a most notorious and significant act, viz., that of fencing it off from his lot and including it within the enclosure of his neighbor. His motive in doing this is unimportant. No amount of explanation can make the erection of this fence proof of actual possession of the land shut off by it from the rest of plaintiff's domain. The fact that he entered upon his neighbor's enclosure thus created for the purpose of painting his store and of whitewashing his fence, is likewise incapable of affording such proof. So that, when his case closed, the plaintiff stood upon his *right* of possession as against one in visible occupancy, and not in the position of one whose possession of lands had been injured by a wrongful entry thereon, which is the gist of the action of trespass. The nonsuit should have been granted.

There was error likewise in the mode in which the trial court dealt with the question of the proper location of the division line between the parties upon which the plaintiff based his right of possession under his deed from Smock.

The jury were told by the court that the plaintiff's line extended to and included the eaves of the storehouse. The question was thus treated in all respects as one free from am-

biguity and involving no disputed question of fact. The construction of the plaintiff's deed rests in the meaning of the description of its first corner and second boundary line. The language of the conveyance is this: "Beginning, &c.; thence 1 chain and 11 links to a point in a line and *just clearing the northeast side of the storehouse on said property; thence along and just clearing said side of said storehouse*," &c. The contention of the plaintiff is that a call in a deed for the "side" of a building as a boundary, is, *vi ex termini*, a call for the farthermost limit of such structure, which, in the case in hand, is the edge of the eaves, which project twenty-one inches beyond the wall. Numerous decisions are cited in which this construction has been given to words of like import. Cases are also cited in which the opposite view has been followed. This apparent contrariety is not one of substantial difference, but inheres in the nature of the inquiry in each case, viz., what intention have the parties expressed by the words they employed?

Where the point from which a measurement is to be made is established by reference to the side of a building, no common inference can be drawn, whether the foundation, the elevation or the line of the eaves was intended, unless there be some indication in other expressions of the deed or in *aliunde* proof of the situation of the subject-matter. Hence, in such cases, diverse rules have been followed, as illustrated by *Millet* v. *Fowle*, 8 *Cush.* 150, where the court held that "four feet from the northerly side of the building" meant four feet from the eaves, and *Calais* v. *Bradford*, 51 *Me.* 414, where it was held that a boundary eight feet and four inches from the side of a building meant from the wall, and not from any overhanging portion of the structure. Where, however, the question is how much passes by the conveyance of a building, where the building itself is made one of the boundaries, the strong inference of common sense is that the parties did not solemnly contract to sever the title to the eaves from that of the rest of the house. This is not, it is true, a presumption of law that may not be rebutted, but it

is "a presumptive inference" so strong that in the absence of rebutting evidence of a contrary purpose the court will, if equally permissible, place such an interpretation upon the language of a grantor that it shall convey the entire building by which he bounds his grant, rather than that which leaves in him for future disposition the title to the eaves only.

In the case before us, this presumption of fact was met by the defendant in two ways—*first,* by proof that by actual measurement the calls of plaintiff's deed were satisfied by the wall as a boundary, and hence did not extend to the line of the eaves, and *second,* that the plaintiff himself, twenty-one years before, had erected and ever since maintained a division fence, which was on the line of the wall of the storehouse extended and not upon that of the eaves which projected twenty-one inches over it.

The first of these proofs, standing alone, would not be sufficient to take to the jury the question of the force of a description whose calls were for measurements or boundaries unambiguous in their meaning or location. Taken, however, in connection with the undisputed fact that the plaintiff, shortly after he acquired his present title, erected between himself and his grantor a fence upon a line hostile to his present contention, the case presented in competent form the question of the real meaning of the words under which plaintiff claimed his right of possession to the *locus in quo.*

The solution of this question, whether it be regarded as one of practical location or of ambiguity in the description of a monumental boundary, was one of fact for the jury and should have been left to them under the proper instructions.

There was error also in the omission of the court to charge the jury with respect to the adverse possession of the defendant when requested so to do. In view, however, of the unimportant part played by this refusal as one only of the grounds for a reversal, it is not thought necessary at this time to rehearse the somewhat elementary rules by which an adverse user may be established or its interruption successfully main-

tained, which are succinctly stated by Mr. Justice Magie, in *Johnston* v. *Fitzgeorge,* 21 *Vroom* 470.

The judgment below is reversed and the cause remitted for a *venire de novo.*